IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

Khalil Clarke,

Plaintiff,

v.

Experian Information Solutions, Inc.,

Defendant.

Civil Action No.: ______________

**JURY TRIAL DEMANDED**

## COMPLAINT

1. Khalil Clarke asked Experian Information Solutions, Inc. for a copy of his own credit file. Federal law gave him the right to see it, and on May 27, 2026 he exercised that right so he could review his accounts before pursuing new credit. What every consumer expects from that request is simple: a complete and honest accounting of what the credit bureau has on him.

2. What Experian delivered instead was a disclosure riddled with unpopulated data fields and a payment history table that repeated one identical, dated payment notation on twenty-four consecutive monthly rows, no matter which month the row was supposed to describe. Mr. Clarke is not an accountant and not a lawyer. He wanted to know what was being reported about him, and the document Experian gave him made that impossible.

3. The problem ran through every account on the file. On the Discover Card tradeline, the Recent Payment, Monthly Payment, and Terms fields in the Account Details section displayed only a hyphen and no data, while the Balance History table for the very same account repeated the identical entry "$0 on 11/17/2022" on every monthly row from May 2024 through April 2026,

and the account's Additional Info section reported a high balance figure that contradicts the Highest Balance figure Experian displayed a few lines above it. On the Jefferson Capital Systems and National Recovery Agency collection accounts, the Highest Balance fields likewise displayed only a hyphen, and both accounts carried Experian status annotations months older than the earliest monthly data Experian disclosed for them. The same categories of gaps and contradictions, recurring across three unrelated furnishers, are consistent with a disclosure process that generates omissions rather than reporting the data Experian's own annotations elsewhere show it possesses.

4. The Fair Credit Reporting Act required Experian, upon Mr. Clarke's request, to clearly and accurately disclose all information in his file at the time of the request. 15 U.S.C. § 1681g(a)(1). Experian did not.

5. Mr. Clarke brings this action for actual damages, statutory damages, punitive damages, and costs, and asks this Court to grant the relief set out below.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331 because this action arises under the laws of the United States, specifically the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq.

7. Venue is proper in this District under 28 U.S.C. § 1391(b) because Plaintiff resides in this District and a substantial part of the events giving rise to this action occurred in this District.

## PARTIES

8. Plaintiff Khalil Clarke is a natural person residing at 16 Stockton Street, Dorchester Center, Massachusetts 02124, and is a “consumer” as defined by 15 U.S.C. § 1681a(c).

9. Defendant Experian Information Solutions, Inc. ("Experian") is an Ohio corporation with a principal place of business at 475 Anton Boulevard, Costa Mesa, California 92626. On information and belief, Experian's registered agent for service of process in the Commonwealth of Massachusetts is CT Corporation System, 155 Federal Street, Suite 700, Boston, Massachusetts 02110.

10. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f): for monetary fees, it regularly engages in the practice of assembling and evaluating consumer credit information for the purpose of furnishing consumer reports to third parties, and it uses means and facilities of interstate commerce, including the mail and the internet, to do so.

## FACTUAL ALLEGATIONS

**A. Plaintiff's File Disclosure Request and the Governing Statutory Duty**

11. On or about May 27, 2026, Plaintiff requested his consumer file disclosure from Experian. Experian generated the disclosure that same day, bearing report number 1900-4606-80 (the "Disclosure"). A complete copy is attached as Exhibit A.

12. The Disclosure reported three accounts, zero public records, and three hard inquiries on Plaintiff's file.

13. Upon receipt of Plaintiff's request, 15 U.S.C. § 1681g(a)(1) required Experian to clearly and accurately disclose to Plaintiff all information in Plaintiff's file at the time of the request. The statute's operative term is "file," not "consumer report." Congress defined "file" at 15 U.S.C. § 1681a(g) to mean all of the information on the consumer recorded and retained by a consumer reporting agency, regardless of how the information is stored, a definition materially broader than the definition of "consumer report" at 15 U.S.C. § 1681a(d). Reading "file" to mean no more than the report a bureau chooses to display would collapse the two defined terms into one

and render the broader definition superfluous. See Nunnally v. Equifax Info. Servs., LLC, 451 F.3d 768, 773 (11th Cir. 2006) (the FCRA's use of distinct defined terms forecloses conflating "file" with "consumer report"); Cortez v. Trans Union, LLC, 617 F.3d 688, 711-12 (3d Cir. 2010) (section 1681g requires disclosure of all information in the consumer's file, not merely the information a CRA elects to place on the reports it sells). A federal court recently applied precisely this statutory chain in recommending denial of a credit bureau's motion to dismiss a materially similar § 1681g(a)(1) claim. Stafford v. Trans Union, LLC, No. 4:25-cv-00921-JDK (E.D. Tex.), Report and Recommendation, Doc. No. 25, at 7 (Nov. 17, 2025) (the statutory definitions separate "consumer report" from "file," define "file" more broadly, and impose broader disclosure requirements under § 1681g(a)(1) with narrowly outlined exceptions).

14. The information at issue in this Complaint is not internal record-keeping or audit-trail data. As alleged below, it is account-level credit data furnished to Experian by Plaintiff's creditors, of the same categories Experian includes in the consumer report products it sells to third parties. This case therefore does not implicate the narrower holding of Gillespie v. Trans Union Corp., 482 F.3d 907 (7th Cir. 2007), which addressed internal codes and record-keeping information, and Plaintiff pleads that distinction as a matter of fact. Accord Stafford, Doc. No. 25, at 6-8 (crediting the same distinction where the omitted data was furnished by creditors and appeared in the plaintiff's file, and observing that no circuit precedent adopts the narrower reading the bureau advocated).

**B. Experian's Possession of the Omitted, Garbled, and Contradictory Information**

15. The Discover Card Balance History table did not merely omit data; it garbled it in a way that proves possession. For twenty-four consecutive monthly rows, from May 2024 through April 2026, Experian's own table displayed the identical notation "$0 on 11/17/2022" in the Paid

column, unchanged from row to row regardless of the month each row purported to describe, alongside an unvarying balance of $1,887 and an unvarying scheduled payment of $0 on every one of those twenty-four rows. A specific dollar amount tied to a specific calendar date demonstrates that Experian's systems record and retain both a payment amount and a date of last payment for this account. Yet in the Account Details section for the same account, the Recent Payment field displayed only a hyphen, "-", and no data. The repetition of one static, dated value across twenty-four rows, rather than month-to-month variation, supports the reasonable inference that Experian's disclosure-generation process carried a stored value forward as a placeholder instead of populating each row with the corresponding monthly figure.

16. The Disclosure also contradicts itself on the Discover Card account. In the Account Details section, Experian reported "Highest Balance $2,263" and, separately, "Credit Limit $800." A few lines below, in the Additional Info section for the same account, Experian reported: "Between May 2024 and Apr 2026, your credit limit/high balance was $800." The two statements cannot both be accurate as to the same account over an overlapping period. Either Experian's file contains a high balance of $2,263 that its Additional Info section understates, or it does not, in which case the Highest Balance field overstates it. Either way, Experian holds a high balance figure for this account and disclosed conflicting versions of it in a single document, leaving Plaintiff unable to determine which figure his file actually contains. This is a failure to disclose clearly and accurately, and it independently demonstrates that the data exists within Experian's systems.

17. Experian's own currency annotations confirm that its systems hold account data more recent than, and absent from, the tables it disclosed. For the Discover Card account, the Disclosure stated "Balance Updated 05/15/2026" and reported the account "$1,887 past due as of May

2026," yet the Balance History table for that account ended at April 2026. For the Jefferson Capital Systems account, the Disclosure stated "Balance Updated 05/23/2026" and reported the account "$1,485 past due as of May 2026," yet that account's Balance History table also ended at April 2026. For the National Recovery Agency account, the Disclosure stated "Balance Updated 05/02/2026" and reported "$3,012 past due as of May 2026," yet the Balance History table contained a single row, April 2026. On each account, Experian announced the currency of data it did not display.

18. Experian's status annotations run in the other direction as well, showing retained information older than the earliest monthly data disclosed. For the Jefferson Capital Systems account, Experian reported "Status Updated Dec 2025" and a Date Opened of December 12, 2025, yet the earliest monthly row Experian disclosed for that account is February 2026. For the National Recovery Agency account, Experian reported "Status Updated Jul 2025" and a Date Opened of July 28, 2025, yet the only monthly row Experian disclosed for that account is April 2026. On each account, Experian recorded and retained a dated status determination months before the earliest month for which it disclosed any underlying data.

19. The Disclosure likewise showed that Experian's systems retain account-level history for the Discover Card tradeline reaching back years before the earliest row of the Balance History table it produced: the Reinvestigation Info section for that account stated, "This item remained unchanged from our processing of your dispute in Mar 2023," and the account comment read, "Account previously in dispute - investigation complete, reported by data furnisher." Experian thus maintains and can retrieve dispute-processing and account history for this tradeline from periods its disclosed Balance History table does not cover.

20. On information and belief, furnishers such as Discover, Jefferson Capital Systems, and National Recovery Agency report standardized monthly account data to Experian in the credit reporting industry's Metro 2 furnishing format, including the Actual Payment Amount, Scheduled Monthly Payment, Credit Limit, Highest Credit, Date of Last Payment, and Terms Duration fields, and, for collection accounts and debt buyers, original-creditor data carried in the K1 segment, which the industry's reporting guidance requires each time such an account is reported. Plaintiff cites these industry reporting standards solely as factual support for the allegation, on information and belief, that the furnishers reported this data to Defendant, not as an independent basis for liability.

21. As reflected in the public record of federal litigation, Experian maintains consumer data within a database known as CAPS, which contains, among other things, records designated the "Dispute Response Log" and the "Disclosure Log." See CFPB v. Experian Info. Sols., Inc., No. 8:25-cv-00024-MWC-DFM (C.D. Cal.), Dkt. 129 (Mar. 6, 2026) (order compelling production of the data contained in the Dispute Response Log and the Disclosure Log within the CAPS database). On information and belief, the data showing what Experian's systems contained for each tradeline described in this Complaint, and what portion of that data was presented on Plaintiff's Disclosure, resides in those systems and in the consumer report products Experian transmitted to the third parties identified in Section E below.

22. On information and belief, Experian sells consumer report products to creditors and other subscribers that contain the very categories of account data, including payment amounts, payment dates, scheduled payments, high balances, and terms, that appeared unpopulated, garbled, or internally inconsistent on the Disclosure Experian provided to Plaintiff.

23. Whether the unpopulated, static-placeholder, and conflicting fields identified in this Complaint reflect furnisher non-reporting, as Experian will presumably contend, or Experian's maintenance and withholding of that data within its own file-maintenance and disclosure-generation systems, including the systems identified in paragraph 21 above, as Plaintiff alleges, is a factual question ascertainable only from Experian's own systems and from the consumer report data Experian transmitted to the third parties identified in Section E below. Plaintiff will seek that data in discovery.

**C. Account-by-Account Disclosure Deficiencies**

24. Discover Card (partial account number 601100XXXXXXXXXX). In the Account Details section, the Recent Payment, Monthly Payment, and Terms fields each displayed only a hyphen, "-", and no data, even though the same account's Balance History table carried a payment notation referencing a November 17, 2022 payment date. The Balance History table compounded the failure: on every monthly row from May 2024 through April 2026, twenty-four consecutive rows, Experian displayed the identical entry "$0 on 11/17/2022" in the Paid column, the same static payment date repeated unchanged regardless of the reporting month. And as described in paragraph 16 above, Experian reported two irreconcilable high balance figures for this account within the same document.

25. Jefferson Capital Systems (partial account number 416026XXXXXXX). The Account Details section reported this account with Account Type "Debt Buyer," an Original Balance of $1,485, a Date Opened of December 12, 2025, a status of "$1,485 past due as of May 2026," and "Status Updated Dec 2025," yet the Highest Balance field displayed only a hyphen, "-", and no data. Experian's display of a specific Original Balance for this account, together with the statement in the account's Additional Info section that "The original amount of this account was

$1,485," demonstrates that Experian possesses balance-level data for the account while leaving the Highest Balance field unpopulated. In addition, although Experian reported that it updated this account's status in December 2025, the Balance History table Experian disclosed begins at February 2026, and the Disclosure contains no data of any kind for the two months of December 2025 and January 2026.

26. National Recovery Agency (partial account number 632853XX). The Account Details section reported this account with Account Type "Collection," an Original Balance of $3,012, a Date Opened of July 28, 2025, a status of "$3,012 past due as of May 2026," and "Status Updated Jul 2025," yet the Highest Balance field displayed only a hyphen, "-", and no data. In addition, although Experian reported that this account was opened on July 28, 2025 and that it updated the account's status in July 2025, the only monthly data of any kind that Experian disclosed for this account is a single Balance History row for April 2026. The Disclosure contains no balance figure, no scheduled payment, no payment entry, and no monthly status for any of the eight months from August 2025 through March 2026, a period during which Experian's own annotations show it was carrying a dated status determination for the account. Experian nonetheless reported the account's then-current past-due status and balance.

27. Plaintiff does not allege that the Disclosure conceals data elsewhere within its four corners. He alleges the opposite: nothing elsewhere in the Disclosure, viewed in its entirety, supplies the omitted information or cures the deficiencies identified above. No portion of the document discloses the Monthly Payment or Terms data for the Discover Card account, any monthly figure of any kind for the National Recovery Agency account from August 2025 through March 2026, or any monthly figure of any kind for the Jefferson Capital Systems account for December 2025 or January 2026. The only payment notation appearing anywhere for the Discover Card account

is the static, repeated "$0 on 11/17/2022" entry, which garbles rather than supplies a month-by-month payment history. The Original Balance figures displayed for the two collection accounts are a distinct data element from the omitted Highest Balance figures, as the Disclosure itself demonstrates on the Discover Card account, where Experian reported a Highest Balance of $2,263 against a credit limit of $800. And the conflicting high balance statements described in paragraph 16 above are not cured by reading the document as a whole; reading the document as a whole is what reveals them.

28. Experian may contend that the data absent from the Disclosure was never furnished to it and therefore was never in Plaintiff's file. That contention is a merits defense resting on facts within Experian's exclusive control, not a defect in this pleading. Plaintiff alleges, on information and belief and on the basis of Experian's own dated annotations described in paragraphs 17 through 18 above, that Experian recorded and retained information about each of these accounts for the periods at issue. Whether Experian's systems contain that data is a question this case will resolve on the evidence.

29. Section 1681g(a)(1) imposes a disclosure duty that is distinct from the FCRA's inaccurate-reporting provisions. Plaintiff is not required to plead an inaccuracy under 15 U.S.C. § 1681e(b) or § 1681i to state a claim for an incomplete or unclear file disclosure under § 1681g(a)(1). See Blevins v. Equifax Info. Servs., LLC, No. 25-cv-23481-BB (S.D. Fla.), Order, Dkt. 24, at 3-4 (Dec. 29, 2025) (denying judgment on the pleadings; § 1681g(a)(1) does not require a showing of inaccuracy, because the disclosure duty is distinct from claims alleging inaccurate reporting under other FCRA provisions). Plaintiff pleads the deficiencies described above both as omissions from the required disclosure and, as to the conflicting high balance

statements, as a failure to disclose clearly and accurately; the claim does not depend on the inaccuracy framing.

30. These deficiencies defeat the purpose for which Congress mandated file disclosure. A consumer who cannot see the payment amounts, payment dates, high balances, and monthly history his file contains, and who is given two different high balance figures for the same account, cannot determine whether those items are accurate, and cannot exercise his dispute rights under 15 U.S.C. § 1681i in an informed manner. The Supreme Court has recognized that the FCRA's disclosure requirements protect the consumer's interest in learning of inaccuracies in his file so he can correct them before the file is disseminated. TransUnion LLC v. Ramirez, 594 U.S. 413, 440 (2021).

**D. Aggregate Pattern**

31. In total, the Disclosure contains at least forty unpopulated, missing, static-placeholder, or internally conflicting data fields across its three reported accounts: three unpopulated Account Details fields, twenty-four static-placeholder Balance History rows, and one pair of conflicting high balance statements on the Discover Card account; one unpopulated Account Details field and two months wholly absent from the balance history on the Jefferson Capital Systems account; and one unpopulated Account Details field together with eight months wholly absent from the balance history on the National Recovery Agency account. An itemized inventory is attached as Exhibit D.

32. The Discover Card account is a bank-issued revolving tradeline; Jefferson Capital Systems and National Recovery Agency are unrelated third-party debt collectors. These three furnishers share no ownership, reporting software, or data-transmission relationship. Furnishers transmit account-level data to Experian, but which fields appear on a consumer's disclosure, and how a

Balance History table is generated from the data received, is controlled by Experian's own disclosure-generation process. On information and belief, the omissions, placeholder entries, and conflicting statements described above result from automated disclosure-generation templates Experian uses to produce file disclosures requested through the annualcreditreport.com channel, a process that operates the same way for other consumers. The recurrence of the same categories of deficiency, unpopulated payment and Highest Balance fields, dated Experian annotations unsupported by any disclosed monthly data, and materially incomplete balance history, across three unrelated furnishers is more consistent with a practice originating on Experian's side of the disclosure than with three independent furnishers coincidentally producing identical gaps. See Williams v. First Advantage LNS Screening Sols. Inc., 947 F.3d 735, 749-50 (11th Cir. 2020) (a uniform pattern across unrelated accounts supports willfulness). Materially similar allegations, that omissions stemmed from systemic issues in a bureau's automated disclosure templates used for annualcreditreport.com requests, known to the bureau for years and affecting other consumers, were held sufficient, construed liberally, to state a willful violation and to confer standing. Stafford, Doc. No. 25, at 5-6.

**E. Dissemination to Third Parties**

33. On or about February 6, 2026, Experian transmitted Plaintiff's consumer report to NCCINC/Ocean Honda of Hanover, as evidenced by the hard inquiry recorded on Plaintiff's file disclosure.

34. On or about February 9, 2026, Experian transmitted Plaintiff's consumer report to NCCINC/Ocean Honda of Hanover a second time, as evidenced by a second, separately dated hard inquiry recorded on Plaintiff's file disclosure.

35. On or about March 12, 2025, Experian transmitted Plaintiff's consumer information to Cap One NA, as evidenced by the hard inquiry recorded on Plaintiff's file disclosure.

36. Experian's March 12, 2025 transmission is independently documented. By notice dated March 12, 2025, Capital One, N.A. informed Plaintiff that its decision was based in whole or in part on information obtained in a report from a consumer reporting agency, listed Experian among the agencies identified on the notice, and separately disclosed to Plaintiff a credit score of 547, dated March 12, 2025, expressly listing its source as Experian. The notice identified as key factors adversely affecting that score, among others, serious delinquency together with a public record or collection filed, and the number of accounts with delinquency, the very categories of derogatory information carried on the three tradelines described in Section C above. A copy of that notice is attached as Exhibit E.

37. Plaintiff pleads the Capital One notice for what it says and no more. The notice states that the online form Plaintiff submitted was not a credit card application and that his credit score was not affected. Plaintiff therefore does not allege that this notice reflects a denial of a credit application, and no allegation in this Complaint depends on characterizing it as one. Plaintiff pleads the notice as documentary corroboration of two facts: that Experian transmitted Plaintiff's consumer information to Capital One on March 12, 2025, and that the score Capital One received on that date was sourced from Experian and was driven by the derogatory tradelines whose underlying data Experian did not disclose to Plaintiff.

38. Each of the foregoing transmissions disseminated Plaintiff's consumer information to a third party from the same underlying file that Experian later declined to disclose completely and accurately to Plaintiff himself, and each establishes a concrete injury in fact sufficient for Article III standing. TransUnion LLC v. Ramirez, 594 U.S. 413 (2021); Tailford v. Experian Info. Sols.,

Inc., 26 F.4th 1092 (9th Cir. 2022) (substantive omissions from a § 1681g file disclosure, coupled with downstream consequences, support standing).

**F. Notice and Willfulness**

39. The Consumer Financial Protection Bureau's Advisory Opinion on Fair Credit Reporting; File Disclosure, 89 Fed. Reg. 4167 (Jan. 23, 2024), places nationwide consumer reporting agencies, including Experian, on specific and current notice that § 1681g(a)(1) requires disclosure of all information in a consumer's file in a form the consumer can understand and use to determine whether the information is accurate.

40. After January 23, 2024, no reading of the statutory term "file" that excludes creditor-furnished tradeline data from a consumer's file disclosure remained objectively reasonable. Whatever interpretive latitude a consumer reporting agency might once have claimed, authoritative guidance from the agency charged with administering the FCRA forecloses it, and continued adherence to a disapproved reading is reckless within the meaning of Safeco Insurance Co. of America v. Burr, 551 U.S. 47, 69-70 (2007). Plaintiff's Disclosure was generated on May 27, 2026, more than two years after that guidance issued.

41. The Federal Trade Commission's Advisory Opinion to Katrina Darcy, dated June 30, 2000, placed nationwide consumer reporting agencies, including Experian, on notice more than twenty-five years ago that withholding data fields from a consumer's own file disclosure while maintaining that same data in its systems can violate 15 U.S.C. § 1681g(a)(1).

42. The pattern described in paragraphs 31 and 32 above, the same categories of unpopulated fields, placeholder entries, and unsupported dated annotations recurring across three unrelated furnishers, is consistent with a deliberate disclosure practice rather than isolated clerical error. Experian's continued operation of that practice, in light of the notice described in paragraphs 39

through 41 above, was objectively unreasonable under Safeco, 551 U.S. at 69. A person willfully violates the FCRA when he knowingly and intentionally commits an act in conscious disregard for the rights of others. Cousin v. Trans Union Corp., 246 F.3d 359, 372 (5th Cir. 2001).

43. On information and belief, some of the disclosure practices described in this Complaint are similar in kind to practices described in a pending federal enforcement action filed against Experian by its primary regulator. See CFPB v. Experian Info. Sols., Inc., No. 8:25-cv-00024-MWC-DFM (C.D. Cal., filed Jan. 7, 2025). That action remains pending: Experian's motion to dismiss the operative complaint was denied on October 22, 2025 (Dkt. 103), Experian answered, and the action is in active discovery. Plaintiff cites that action for notice purposes only, and not as a judicial finding regarding Experian's conduct toward Plaintiff or anyone else. Experian's continued operation of practices materially identical to those described in a pending federal enforcement action filed by its primary regulator confirms willful disregard of known legal obligations under Safeco, 551 U.S. at 69.

**G. Actual Damages**

44. As a direct and proximate result of Experian's incomplete and unclear Disclosure, Plaintiff was unable to verify the accuracy of $6,384 in derogatory balances reported against him: the $1,887 charged-off balance on the Discover Card account, the $1,485 collection balance on the Jefferson Capital Systems account, and the $3,012 collection balance on the National Recovery Agency account. For each account, the data needed to evaluate the reported figure, the payment amounts and dates, the high balance, or the monthly balance history, was unpopulated, absent, replaced with a static placeholder, or disclosed in two irreconcilable versions.

45. That inability is not abstract. The March 12, 2025 Capital One notice attached as Exhibit E shows that an Experian-sourced credit score of 547 was delivered to a creditor evaluating

Plaintiff, and that the key factors adversely affecting that score included serious delinquency, a collection filed, and the number of accounts with delinquency. The accounts driving those adverse factors are the same three tradelines whose supporting data Experian did not disclose to Plaintiff. Experian's file was being used to evaluate Plaintiff while Plaintiff was denied the information needed to check it.

46. The deficiencies impaired Plaintiff's dispute rights under 15 U.S.C. § 1681i. Plaintiff could not dispute in an informed manner a payment history he could not see, a high balance disclosed to him in two conflicting figures, or monthly balances that were never disclosed at all.

47. Plaintiff spent time he would not otherwise have spent reviewing the Disclosure line by line, cross-referencing the Account Details sections against the Balance History tables and Additional Info sections for each of the three accounts, and attempting to reconcile the unpopulated, repeating, and conflicting entries, before concluding that the document did not permit him to evaluate his own credit file.

48. Plaintiff experienced frustration and concern upon recognizing that Experian had transmitted his consumer information to third-party creditors on the dates identified in paragraphs 33 through 35 above while withholding from Plaintiff himself a complete and internally consistent accounting of the same underlying file.

49. Plaintiff's inability to review a complete and accurate file disclosure impaired his ability to prepare for future credit applications with confidence in what a prospective creditor would see upon reviewing his file.

50. Independently, the systemic and willful character of the conduct alleged in paragraphs 31 through 43 above supports Plaintiff's standing to recover statutory damages under 15 U.S.C. § 1681n. Safeco, 551 U.S. at 54; Killingsworth v. HSBC Bank Nevada, N.A., 507 F.3d 614, 622

(7th Cir. 2007); Stafford, Doc. No. 25, at 5-6. Plaintiff pleads this basis in addition to, and not in place of, the concrete injuries alleged in paragraphs 44 through 49 above.

## CAUSES OF ACTION

## COUNT I

## WILLFUL VIOLATION OF 15 U.S.C. § 1681g(a)(1)

## INCOMPLETE AND INACCURATE FILE DISCLOSURE

51. Plaintiff incorporates by reference paragraphs 1 through 50 above as though fully set forth herein.

52. 15 U.S.C. § 1681g(a)(1) requires a consumer reporting agency, upon request, to clearly and accurately disclose to the consumer all information in the consumer's file at the time of the request.

53. Experian violated 15 U.S.C. § 1681g(a)(1) through at least the following distinct factual failures, each of which independently supports this Count:

a. **Unpopulated Account Details fields.** Experian left the Recent Payment, Monthly Payment, and Terms fields unpopulated on the Discover Card account, and the Highest Balance field unpopulated on both the Jefferson Capital Systems and National Recovery Agency accounts, as described in paragraphs 24 through 26 above.

b. **Static placeholder reporting.** Experian displayed an identical, unvarying payment notation across twenty-four consecutive monthly rows of the Discover Card Balance History table, as described in paragraphs 15 and 24 above, rather than the month-to-month data an actual payment history would show.

c. **Internally conflicting high balance disclosure.** Experian disclosed two irreconcilable high balance figures for the Discover Card account within the same document, as

described in paragraph 16 above, leaving Plaintiff unable to determine which figure his file contains.

d. **Monthly data absent for periods Experian's own annotations cover.** Experian disclosed a single month of data for the National Recovery Agency account and no data for two months on the Jefferson Capital Systems account, as described in paragraphs 25 and 26 above, while simultaneously reporting dated status determinations and current past-due balances for both accounts.

54. Experian's violation was willful within the meaning of 15 U.S.C. § 1681n for the reasons set forth in paragraphs 39 through 43 above, entitling Plaintiff to statutory damages of not less than $100 and not more than $1,000 per willful violation, actual damages, and punitive damages.

55. The third-party transmissions described in paragraphs 33 through 36 above occurred while the deficiencies described in this Count remained in Plaintiff's Disclosure or in the underlying file, and are alleged in support of Plaintiff's standing and actual damages, not as separately multiplied statutory violations.

56. As a result of this violation, Plaintiff is entitled to actual damages, statutory damages, punitive damages, and the costs of this action pursuant to 15 U.S.C. § 1681n.

**COUNT II**

**NEGLIGENT VIOLATION OF 15 U.S.C. § 1681o**

**INCOMPLETE AND INACCURATE FILE DISCLOSURE (PLED IN THE ALTERNATIVE)**

57. Plaintiff incorporates by reference paragraphs 1 through 56 above as though fully set forth herein.

58. 15 U.S.C. § 1681g(a)(1) requires a consumer reporting agency, upon request, to clearly and accurately disclose to the consumer all information in the consumer's file at the time of the request.

59. In the alternative to Count I, and only if Experian's violation of 15 U.S.C. § 1681g(a)(1) is found not to have been willful, Experian's violation was negligent within the meaning of 15 U.S.C. § 1681o, entitling Plaintiff to actual damages and the costs of this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Khalil Clarke respectfully requests that this Court enter judgment in his favor and against Defendant Experian Information Solutions, Inc. as follows:

(a) Judgment for Plaintiff on all Counts;

(b) Actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(c) Statutory damages of not less than $100 and not more than $1,000 per willful violation pursuant to 15 U.S.C. § 1681n(a)(1)(A);

(d) Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

(e) Costs of this action pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

(f) An order directing Defendant to provide Plaintiff with a complete and corrected disclosure of all information in Plaintiff's file, pursuant to 15 U.S.C. § 1681g(a)(1); and

(g) Such other and further relief as the Court deems just and proper.

Plaintiff reserves the right to amend this Complaint pursuant to Fed. R. Civ. P. 15(a) to add reinvestigation counts under 15 U.S.C. § 1681i if and when a qualifying dispute record is established.

## DEMAND FOR JURY TRIAL

Pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Khalil Clarke

Khalil Clarke

Pro Se Plaintiff

16 Stockton Street

Dorchester Center, MA 02124

Email: clarkek617@gmail.com

Date: August 11, 2026

**EXHIBIT LIST**

Exhibit A - Full Experian consumer file disclosure, all pages, report number 1900-4606-80.

Exhibit B - CFPB Advisory Opinion, Fair Credit Reporting; File Disclosure, 89 Fed. Reg. 4167 (Jan. 23, 2024).

Exhibit C - FTC Advisory Opinion to Darcy (June 30, 2000).

Exhibit D - Itemized inventory of unpopulated, missing, static-placeholder, and internally conflicting data fields (attached following this list).

Exhibit E - Capital One, N.A. notice to Plaintiff dated March 12, 2025, with credit score disclosure.